## UNITED STATES INV. CORPORATION, Limited, v. CHANDLER et al.
### No. 4367.

Court of Civil Appeals of Texas. Amarillo.
Feb. 25, 1935.

Rehearing Denied April 1, 1935.

Long & Wortham and Hutchison & Fisher, all of Paris, for appellant.

McKinney & Berry, of Cooper, for appellees.

HALL, Chief Justice.

The appellant, a foreign corporation, sued Chandler and wife to recover upon a vendor's lien note in the sum of $300, which was due November 1, 1929, with 10 per cent. interest and 10 per cent. attorneys' fees and to foreclose the vendor's lien against the defendants, together with a subsequent deed of trust lien upon 81.11 acres of land given to secure said note. The note sued upon is alleged to be the unpaid note of a series of six notes each in the sum of $300, made payable on November 1, 1928, 1929, 1930, 1931, 1932, and 1933, respectively. It is further alleged that, by a sale of a part of the original 161.11 acres

of land for which the series of notes was executed, four of the original notes had been paid and discharged; that the note due November 1, 1928, was paid on or about October 18, 1929, and the note due November 1, 1929, had not been paid; that the note due November 1, 1930, when paid was canceled and mailed to Chandler, but the remaining notes of the series paid out of the proceeds of the sale of part of the land had not been delivered to Chandler and were tendered into court for delivery.

Chandler's defense was that the note sued on had been paid by him on January 10, 1931. By her answer Mrs. Chandler adopted the answer of her husband.

Chandler alone signed the series of notes. No personal judgment was sought against Mrs. Chandler, but the prayer is for a foreclosure of the liens as against her. There was no evidence that the land in controversy was the homestead of Chandler and wife.

The case was submitted to the jury upon this issue: "Do you find from a preponderance of the evidence in this case that on or about the 10th day of January, 1931, the defendant Will Chandler paid the amount then due on the note involved in this case?" The jury answered in the affirmative.

The appellant requested that the following issue be submitted: "Do you find from a preponderance of the evidence in this case that the payment of said note involved in this case was made by the plaintiff [defendant] Will Chandler to any one authorized by D. H. Scott & Son as agent of plaintiff to accept and receipt for the same?"

The court refused to submit this issue, and such refusal is made the basis of the principal contention in this appeal. We think the court erred in not submitting this issue.

Will Chandler answered by a general plea of payment, in substance that on or about the 10th day of January, 1931, he paid to plaintiff the sum of $300 and interest in full satisfaction of the note sued on; that plaintiff then and there accepted and received of and from him said sum in full satisfaction and discharge of its said cause of action; that it accepted said amount paid to it by this defendant in payment in full of said debt. Wherefore he is not indebted to plaintiff in any amount. Chandler testified that he paid the $300 and interest to a young lady in Scott's office, but did not know her name. The note was made payable at Scott's office. He said he made the payment to a girl because when he went into the office and asked

for Scott she said he was not in and she did not know when he would return, and did not know whether he would return that day or not; that there were three or four young ladies in the office, and one young man went to the office with him, named Coker Wells. He testified that he went to Paris that day with Wells and one Miller. He further testified that he paid the note in cash and that the girl gave him a receipt for the money, but he had not been able to find the receipt and she said, "We will send you the note when Mr. Scott comes in"; that she could not get the note, but she got the amount due from the books and he took her word for it; that, in addition to the face of the note, he paid between $3 and $4 interest.

The record further shows that Chandler stated he believed he would know the young lady if he could see her again. It appears that the only ladies employed in Scott's office at that time were Christine Stanley, Berta Nix, Miss Broline, and Mrs. Pryor. Chandler stated that he knew Mrs. Stanley, and she is not the one he made payment to. He failed to identify either of the others as the party to whom he paid the money. It was shown that none of the ladies employed in the office of Scott & Son had anything to do with the collection of notes, and that one Mr. Vacca was the only employee authorized to receive money; that in his absence none of the girls had authority to accept and receipt for money.

Vacca testified that he was cashier; that it was his duty to receive and receipt for money, and that he alone was responsible for all money; that none of the girls in the office were authorized to receive money during January, 1931. He further testified there was no discrepancy of as much as $300 in his cash in that month.

■ While the issue of the payment of the money is in a sense the ultimate issue, the evidence clearly raises the authority of any one but Vacca or some member of the firm of Scott & Son to receive payment upon notes and obligations and receipt for the same.

"If payment of a negotiable note is made to one who does not produce it, the burden is on the party making payment to show that the person receiving payment was the owner or the note or was authorized to receive it." 8 C. J. 1015, § 1322.

See Catlin v. Reed, 141 Okl. 14, 283 P. 549, 67 A. L. R. 1410; 21 R. C. L. 23, § 17.

As said by Short, P. J., in Horton & Horton v. House (Tex. Com. App.) 29 S.W.(2d) 984, 985: "In a case of this sort the material allegations are to the effect that the plaintiff has suffered damages as the result of negligence on the part of the defendant, and that such negligence was the proximate cause of the injuries inflicted. Anything disclosed by the testimony offered by either party, which rebuts the proof introduced to sustain any of the material allegations of the plaintiff's petition, is admissible under the general issue, and such testimony having been introduced, and a request duly interposed that the issue raised by the conflicting testimony be submitted to the jury, the court is under the duty to comply with the request, for the reason that the testimony introduced, if found to be true, would demonstrate the failure of the plaintiff to establish all the facts necessary to be established in order to make out a cause of action against the defendant."

If the proffered issue had been submitted and the jury had answered in the negative, clearly plaintiff would have been entitled to recover. National Cash Register Co. v. Rider (Tex. Com. App.) 24 S.W.(2d) 28; Ford v. Couch (Tex. Civ. App.) 16 S.W.(2d) 869; Commercial Standard Insurance Co. v. McGee (Tex. Civ. App.) 40 S.W.(2d) 1105.

The refusal of this special issue requires a reversal of the judgment.

■ The court excluded what is designated as the Lake creek letter, which it seems was written by Mrs. Chandler in reply to a letter which the company had written Chandler. The bill of exception relating to this matter fails to show what specific objection, if any, was urged to the introduction of the letter and sustained by the court.

District and county court rule 58 contains a mandatory provision that objections to exclusion or admission of evidence shall be set forth in the bill of exceptions, and an assignment of error to the exclusion of testimony cannot be reviewed by this court when the nature of the objection which was sustained is not shown by the record. Mercedes Produce Co. v. Roddy (Tex. Civ. App.) 249 S. W. 249; Dennis v. Wolfe (Tex. Civ. App.) 276 S. W. 339; Temple Lumber Co. v. Pulliam (Tex. Civ. App.) 272 S. W. 587; Norwich Union Indemnity Co. v. Rollins (Tex. Civ. App.) 8 S.W.(2d) 699.

Error is assigned based upon improper and inflammatory argument of appellee's counsel. We incline to the opinion that some of the argument was objectionable, but, since it will not probably occur upon another trial, it is unnecessary for us to discuss it.

Since the judgment must be reversed, it is not proper for us, in view of another trial, to

1031

discuss the weight or effect of the testimony, which we would have to do in order to pass upon the other assignments.

Because the court refused the requested special issue, the judgment is reversed and the cause remanded.